Michael Mugmon (SBN 251958)
WILMER CUTLER PICKERING HALE
AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Fax: (628) 235-1001
michael.mugmon@wilmerhale.com

Noah A. Levine (*pro hac vice pending*)
Cassandra Mitchell (SBN 321141)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
noah.levine@wilmerhale.com
cassie.mitchell@wilmerhale.com

John Wells (*pro hac vice pending*)
Benjamin Chapin (*pro hac vice pending*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443
Fax: (202) 663-6363
john.wells@wilmerhale.com
benjamin.chapin@wilmerhale.com

*Counsel for Defendant*
*Bank of America, N.A.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Ricky Chen and Amin Wu, individually and as representatives of the class,<br><br>Plaintiffs,<br><br>v.<br><br>Bank of America, N.A.,<br><br>Defendant. | Case No. 3:25-cv-3790-EMC<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS**<br><br>Hon. Edward M. Chen<br>Courtroom 5, 17th Floor<br>Date:    August 7, 2025<br>Time:    1:30 PM |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................................1

STATEMENT OF REQUESTED RELIEF ......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

ISSUES TO BE DECIDED ............................................................................................................2

BACKGROUND .............................................................................................................................2

          A.    EFTA And Regulation E .......................................................................... 2

          B.    Plaintiffs' EFTA Claims .......................................................................... 4

STANDARD OF REVIEW .............................................................................................................5

ARGUMENT ..................................................................................................................................6

    I.    Plaintiffs' Claims Must Be Dismissed Because EFTA Does Not Apply to Wire Transfers ....................................................................................................................6

          A.    EFTA's Text Confirms It Does Not Apply To The Transactions Here ...... 6

          B.    Statutory Context Confirms EFTA Does Not Apply To The Transactions Here ........................................................................................................... 8

          C.    Extensive Case Law Holds That EFTA Does Not Apply To The Transactions Here ................................................................................... 11

          D.    Regulatory Guidance Confirms That EFTA Does Not Apply To The Transactions Here ................................................................................... 13

    II.    Even If EFTA Applied, Plaintiffs Fail To Plausibly Allege An "Unauthorized Transfer" ..................................................................................................................16

    III.    Dismissal Should Be With Prejudice ....................................................................18

CONCLUSION ..............................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................5, 6, 12, 16

*Bodley v. Clark,*
  2012 WL 3042175 (S.D.N.Y. July 23, 2012) ............................................................12

*BPi Bright Power, Inc. v. Umpqua Holding Corporation,*
  669 F. Supp. 3d 904 (N.D. Cal. 2023) ........................................................................4

*Brown v. Gardner,*
  513 U.S. 115 (1994).....................................................................................................7

*Corley v. United States,*
  556 U.S. 303 (2009).....................................................................................................8

*Eisenberg v. Wachovia Bank, N.A.,*
  301 F.3d 220 (4th Cir. 2002) .....................................................................................11

*Fischer & Mandell LLP v. Citibank, N.A.,*
  2009 WL 1767621 (S.D.N.Y. June 22, 2009) ...........................................................12

*Food and Drug Administration v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000)...................................................................................................10

*Gilbert v. Bank of America, N.A.,*
  2014 WL 12644029 (N.D. Cal. Sept. 23, 2014) ........................................................16

*Guarnieri v. Be Money Inc.,*
  2022 WL 11381916 (C.D. Cal. Oct. 18, 2022)..........................................................16

*Hunter v. Citibank, N.A.,*
  2010 WL 2509933 (N.D. Cal. Feb. 3, 2010) ..............................................................4

*Kanji v. Bank of America, N.A.,*
  2020 WL 8175548 (C.D. Cal. Aug. 25, 2020)...........................................................11

*Marx v. General Revenue Corp.,*
  568 U.S. 371 (2013).....................................................................................................8

*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011) .....................................................................................6

*McClellon v. Bank of America, N.A.,*
  2018 WL 4852628 (W.D. Wash. Oct. 5, 2018) .........................................................11

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ..................................................................................5

*National Association of Manufacturers v. Department of Defense*,
    583 U.S. 109 (2018).................................................................................................8

*Nazimuddin v. Wells Fargo Bank N.A.*,
    2024 WL 3431347 (S.D. Tex. June 24, 2024) ........................................................11

*Nazimuddin v. Wells Fargo Bank N.A.*,
    2024 WL 3559597 (S.D. Tex. July 25, 2024)........................................................11

*Nazimuddin v. Wells Fargo Bank N.A.*,
    2025 WL 33471(5th Cir. Jan. 6, 2025) ............................................................11, 12

*New York v. Citibank, N.A.*,
    763 F. Supp. 3d 496 (S.D.N.Y. 2025)...........................................1, 5, 12, 13, 14

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ................................................................................18

*Pope v. Wells Fargo Bank, N.A.*,
    2023 WL 9604555 (D. Utah Dec. 27, 2023).........................................................12

*Pulsifer v. United States*,
    601 U.S. 124 (2024).................................................................................................8

*Regions Bank v. Provident Bank, Inc.*,
    345 F.3d 1267 (11th Cir. 2003) ..............................................................................11

*Sanchez v. Navy Federal Credit Union*,
    2023 WL 6370235 (C.D. Cal. Aug. 14, 2023).......................................................17

*Stepakoff v. IberiaBank Corp.*,
    637 F. Supp. 3d 1309 (S.D. Fla. 2022) ..................................................................12

*Tristan v. Bank of America*,
    2023 WL 4417271 (C.D. Cal. June 28, 2023) .......................................................17

*Trivedi v. Wells Fargo Bank, N.A.*,
    609 F. Supp. 3d 628 (N.D. Ill. 2022) .....................................................................12

*United States v. Mariner Health Care, Inc.*,
    552 F. Supp. 3d 938 (N.D. Cal. 2021) .....................................................................8

*Walling by Walling v. Bank of America, N.A.*,
    --- F. Supp. 3d ---, 2025 WL 1392278 (D.S.C. May 8, 2025) ...........................13

*Wright v. Citizen's Bank of East Tenn.*,
    640 F. App'x 401 (6th Cir. 2016) .........................................................................11

*Zengen, Inc. v. Comerica Bank*,
    41 Cal. 4th 239 (2007) ...................................................................................................4

**CODES, STATUTES, RULES, AND REGULATIONS**

Cal. Com. Code § 11103 .........................................................................................................4

Cal. Com. Code § 11104 ..................................................................................................1, 4, 8

Cal. Com. Code § 11108 .........................................................................................................4

U.C.C. § 4-A .................................................................................................................3, 4, 13

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 5

12 C.F.R. § 205.11 ...............................................................................................................17

12 C.F.R. pt. 210, subpt. B, app. A. ....................................................................................14

12 C.F.R. § 210.25 ...............................................................................................................14

12 C.F.R. § 1005.3 ............................................................................................................3, 7

44 Fed. Reg. 18,467-18,483 (Mar. 28, 1979) ..................................................................3, 7, 8

61 Fed. Reg. 19,678-19,695 (May 2, 1996) .........................................................................14

77 Fed. Reg. 6,194-6,309 (Feb. 7, 2012) ............................................................................13

78 Fed. Reg. 72,813-72,817 (Dec. 4, 2013) ........................................................................15

15 U.S.C. § 1693 ...................................................................................................................2

15 U.S.C. § 1693a ..........................................................................................1, 3, 6, 7, 9, 10, 16

15 U.S.C. § 1693c ..................................................................................................................3

15 U.S.C. § 1693f .............................................................................................................9, 17

15 U.S.C. § 1693g .............................................................................................................3, 9

**OTHER AUTHORITIES**

Federal Reserve Board, Consumer Compliance Handbook (2016),
    https://tinyurl.com/3wfwdsma ........................................................................................14

FDIC, Consumer Compliance Examination Manual  (2022),
    https://tinyurl.com/3c9refbt ............................................................................................14

FinCEN, Feasibility of a Cross-Border Electronic Funds Transfer Reporting
  System Under the Bank Secrecy Act (Oct. 2006),
  https://tinyurl.com/krh9thxp ........................................................................ 15

Mellon, Mark A., FDIC, Interpretive Letter: User's Rights Under EFTA in the
  Event of Bank Error Regarding an Electronic Wire Transfer, 1994 WL
  393720 (Apr. 26, 1994) ............................................................................... 14

OCC, Comptroller's Handbook on Payment Systems (Oct. 2021),
  https://tinyurl.com/yn8c288b ...................................................................... 15

OCC, *Message from the Director–Wire Transfer Scams and Ways to Protect
  Yourself* (July 2023), https://tinyurl.com/38pc7bxu ....................................... 15

1
2
3
4
5
6
7

### NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on August 7, 2025, or as soon thereafter as the matter may be heard, in Courtroom 5 – 17th Floor of the U.S. District Court for the Northern District of California, San Francisco Division, Defendant Bank of America, N.A. ("Bank of America") will and hereby does move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities.

8

### STATEMENT OF REQUESTED RELIEF

9
10

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Bank of America requests that the Court dismiss all of Plaintiffs' claims with prejudice.

11

### MEMORANDUM OF POINTS AND AUTHORITIES

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

For decades, courts, regulators, and legislators have understood that all wire transfers, except for a specific subcategory of cross-border remittance transfers not relevant here, are governed exclusively by Article 4A of the Uniform Commercial Code ("U.C.C.")—not the Electronic Funds Transfer Act ("EFTA").  Likewise, it has long been understood that the key provision of EFTA in this case, 15 U.S.C. § 1693a(7)(B) ("Section 7(B)"), exempts all wire transfers (again, except for cross-border remittance transfers) from EFTA's coverage.  These long-established understandings of the regime governing wire transfers are rooted in the common-sense meaning—and statutory definition—of a wire transfer as a "*series of transactions*, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order."  Cal. Com. Code § 11104(a) (emphasis added).  Here, Plaintiffs take a different view, seeking to apply EFTA to consumer wire transfers by narrowly interpreting the EFTA wire-transfer exemption in Section 7(B), based on the recent decision of the U.S. District Court for the Southern District of New York in *New York v. Citibank, N.A.*, 763 F. Supp. 3d 496 (S.D.N.Y. 2025).  Bank of America is not aware of any court, regulator, or legislator that, before the *Citibank* decision, had endorsed or recognized the novel theory advanced in that case—that Congress intended to exempt from EFTA only some of the transactions that make up a wire transfer.

28

Plaintiffs' putative class action brings two claims under EFTA based on Bank of America's

handling of two wire transfers from their accounts after Plaintiffs fell victim to a scam.  The barebones Complaint alleges little about the circumstances of these transactions, including how the wire transfers were initiated or Plaintiffs' knowledge about those circumstances.  Instead, the Complaint consists primarily of legal argument and conclusions, seeking to capitalize on the outlier *Citibank* decision and impose sweeping liability for conduct never before thought to be governed by EFTA.  Even the *Citibank* court recognized that its decision was contrary to the decisions of numerous other courts, so much so that it certified its order for interlocutory review.  That certification order issued just over a week before Plaintiffs filed suit here.

The Complaint should be dismissed with prejudice because EFTA does not apply to any of the series of transactions that make up a wire transfer.  This includes the debit of the sender's account for the money to be transferred.  Plaintiffs' contrary position is inconsistent with EFTA's text and context, long-settled and uniform case law prior to the *Citibank* decision, and uniform guidance from regulators.  This alone is sufficient to dismiss Plaintiffs' Complaint with prejudice, as the legal deficiency of Plaintiffs' claims cannot be cured by pleading additional facts.  Moreover, even analyzed under EFTA, the Complaint falls well short of plausibly alleging that the transfers were "unauthorized" within the meaning that EFTA ascribes to that term, providing another, independent basis for dismissal.

## ISSUES TO BE DECIDED

1. Whether EFTA applies to the transactions that form the basis of Plaintiffs' claims, despite EFTA's text and courts' and regulators' well-settled understanding to the contrary.

2. Whether, even assuming EFTA applies to the transactions, Plaintiffs have plausibly alleged that these transactions were "unauthorized" under EFTA.

## BACKGROUND

### A.    EFTA And Regulation E

In 1978, Congress enacted EFTA to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems."  15 U.S.C. § 1693(b).  At the time, Congress was focused on "new banking and payment services" like "automated teller machines, … pay-by-phone systems, … direct deposit and automatic payments,

… and point-of-sale transfers"—new consumer-focused banking services that offered significant consumer benefits.  S. Rep. No. 95-915 at *1 (1978).  Among other things, EFTA requires banks offering "electronic fund transfer" services to disclose the terms of those services and to pay statutorily specified reimbursement to consumers who promptly notify the bank of an unauthorized electronic fund transfer.  15 U.S.C. §§ 1693c, 1693g(a).

EFTA applies only to "electronic fund transfer[s]."  The statute defines that term as "any transfer of funds … initiated through an electronic terminal, telephone instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."  15 U.S.C. § 1693a(7).  EFTA also provides for exceptions to that definition.  The exception relevant here, commonly known as the wire-transfer exemption, states that an "electronic fund transfer … does not include … any transfer of funds … made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and which is not designed primarily to transfer funds on behalf of a consumer."  *Id.* § 1693a(7)(B) ("Section 7(B)").  The Board of Governors of the Federal Reserve, in promulgating Regulation E to implement EFTA, provided for the same exemption as Section 7(B).  *See* 44 Fed. Reg. 18,468 (Mar. 28, 1979).  Regulation E thus excluded from its ambit "[a]ny wire transfer of funds for a consumer through the Federal Reserve Communications System or other similar network that is used primarily for transfers between financial institutions or between businesses."  *Id.* at 18,481; *see also* 12 C.F.R. § 1005.3(c)(3) (current version of exemption).  In other words, EFTA expressly exempted, from the outset, wire transfers—transfers of money that rely on interbank transfers between Federal Reserve or other banks.  As discussed in greater detail below, *infra* Parts I.C and I.D, courts and regulators have, for decades, operated under that understanding.

This does not mean that consumer wire transfers are unregulated.  Instead, consumer wire transfers have long been understood to be governed by Article 4A of the U.C.C., which was designed to provide a "comprehensive body of law that defines the rights and obligations that arise from wire transfers."  U.C.C. § 4-A, Prefatory Note (1989).  California codified Article 4A of the U.C.C. "as Division 11 of the California Uniform Commercial Code, entitled 'Funds Transfers,'"

*Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 247 (2007).  The intent of Article 4A was to "govern[] a specialized method of payment … commonly referred to in the commercial community as a wholesale wire transfer."  U.C.C. § 4A-102; *see also BPi Bright Power, Inc. v. Umpqua Holding Corp.*, 669 F. Supp. 3d 904, 906 (N.D. Cal. 2023) ("Division 11 applies to 'funds transfers,' and provides 'a comprehensive body of law to govern the rights and obligations resulting from wire transfers.'" (quoting *Zengen*, 41 Cal. 4th at 253)); *see also* Cal. Com. Code § 11104, U.C.C cmt. 6 ("Most payments covered by Article 4A are commonly referred to as wire transfers.").

As Article 4A states in its definitions, a wire transfer is understood as "the *series* of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order."  Cal. Com. Code § 11104(a) (emphasis added); *see also* U.C.C. § 4A-104(a).  A wire transfer thus starts with a "payment order," which means "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary."  *Id.* § 11103(a)(1).  Stated more simply, a payment order is a bank customer's instruction to their bank (the "receiving bank") to send a certain amount of money to another.

Article 4A's well-established liability regime "encourages quick and inexpensive wire transfers, and in turn facilitates the voluminous daily financial transactions upon which the nation's economy depends, by setting out a definite set of requirements for banks to adhere to when engaging in … wire transfers."  *Hunter v. Citibank, N.A.*, 2010 WL 2509933, at *6 (N.D. Cal. Feb. 3, 2010).  Importantly, EFTA and Article 4A are different, and almost entirely mutually exclusive, legal regimes.  Article 4A makes this so, stating that it "does not apply to a funds transfer *any part of which* is governed by [EFTA]," with limited exceptions for remittance transfers, a type of transaction not relevant here.  Cal. Com. Code § 11108(a) (emphasis added); *see also* U.C.C. § 4A-108(a).

## B.    Plaintiffs' EFTA Claims

Plaintiffs allege that, on September 16, 2024, funds in the amounts of $78,000 and $28,000 were transferred from their accounts to an entity called Ship N Slide LLC.  Compl. ¶¶ 28-31.  The

Complaint acknowledges the transfers were wire transfers—namely, that they were "processed through Fedwire or a similar wire transfer system." *Id.* ¶ 12. The Complaint contains no other concrete allegations about the circumstances of those transactions. Plaintiffs conclusorily describe the transactions as "unauthorized," *e.g.*, *id.* ¶ 28, and in a single, also conclusory allegation, say that they "did not perform, authorize, or benefit from those transactions," *id.* ¶ 33. But, despite their detailed communications to Bank of America about their interactions with alleged scammers—all unmentioned in the Complaint—Plaintiffs nowhere allege how the funds came to be transferred from their accounts, or what role if any Plaintiffs played in any such transfers. Nor does the Complaint include any nonconclusory, factual allegations supporting the inference that the transactions were authorized by someone other than Plaintiffs themselves.

The remainder of the Complaint consists of legal conclusions and argument. Among those legal arguments is a citation to *New York v. Citibank, N.A.*, 763 F. Supp. 3d 496 (S.D.N.Y. 2025), *see* Compl. ¶ 50, a recent decision that, if affirmed, would represent a sea change in the settled understanding of EFTA and Article 4A described above. At the urging of Citibank and a broad group of amici, the district court in that case certified its order for interlocutory appellate review, having done so before Plaintiffs filed their Complaint here. *See* Mem. and Order, No. 1:24-cv-659, Dkt. 73 (Apr. 22, 2025). In its certification order, the district court acknowledged that numerous courts have adopted "a contrary view of the scope of [Section 7(B)]," that "decades of legislative and regulatory history" were relevant to the question, and that its order narrowly construing the EFTA wire-transfer exemption would have "immediate and consequential impacts on the banking and financial services industries." *Id.* at 7-8, 10. As a result, the district court found that "exceptional circumstances" supported immediate appellate review of its novel interpretation of EFTA. *Id.* at 9.

Bank of America now moves to dismiss the Complaint with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint's factual allegations must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) (quoting *Ashcroft v.*

1   *Iqbal*, 556 U.S. 662, 678 (2009)).  "[T]he complaint cannot survive a motion to dismiss unless it

2   alleges facts that plausibly (not merely conceivably) entitle plaintiff[s] to relief."  *Maya v. Centex*

3   *Corp.*, 658 F.3d 1060, 1067-1068 (9th Cir. 2011). "Threadbare recitals of the elements of a cause

4   of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "[T]he

5   tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

6   to legal conclusions."  *Id.*

7                                                   **ARGUMENT**

8   **I.      Plaintiffs' Claims Must Be Dismissed Because EFTA Does Not Apply to Wire**
            **Transfers**
9

10          Plaintiffs' claims depend entirely on whether Section 7(B) applies to—and thus exempts

11  from EFTA's coverage—the full series of transactions comprising a wire transfer.  That is, does

12  Section 7(B) exempt the transfer of funds from Person A's account to Person B's bank?  Or, as

13  Plaintiffs' theory implies instead, does Section 7(B) exempt only the interbank segments of that

14  transfer and not the initial debit of funds from the consumer's account?  EFTA and Regulation E's

15  text and context confirm that it is the former:  Section 7(B) exempts a wire transfer as a whole,

16  end to end—*including* the deduction of funds from the sender's account, and *not just* the interbank

17  segments involved in the transfer.  Extensive case law and regulatory guidance confirms that

18  interpretation of Section 7(B).  The central premise underlying Plaintiffs' claims—that Bank of

19  America committed a "mistake of law" by treating their electronic funds transfers as wire transfers

20  subject to U.C.C. Article 4A, and not EFTA, *e.g.* Compl. ¶¶ 49-50—has no support in the statutory

21  text, the context in which the wire-transfer exemption exists within EFTA, the weight of the case

22  law, or regulatory guidance.

23  **A.      EFTA's Text Confirms It Does Not Apply To The Transactions Here**

24          To start, in defining "electronic fund transfer," EFTA Section 7 confirms that "any transfer

25  of funds" begins when it is "initiated through an electronic terminal … so as to order, instruct, or

26  authorize a financial institution to debit or credit an account."  15 U.S.C. § 1693a(7).  That is what

27  Plaintiffs say happened here—alleging that the funds transfers were initiated electronically with

28  instructions to Bank of America to debit Plaintiffs' accounts to transfer money to a beneficiary at

1    another financial institution.  Compl. ¶¶ 9-10.  Section 7(B), the wire transfer exemption, uses the

2    exact same phrase as Section 7—"any transfer of funds"—to begin its description of a particular

3    form of consumer-initiated transfer that EFTA's definition of "electronic fund transfer" "does *not*

4    include" (and thus is not subject to EFTA's provisions relating to electronic fund transfers).  15

5    U.S.C. § 1693a(7)(B) (emphasis added).  "[T]here is a presumption that a given term is used to

6    mean the same thing throughout a statute."  *Brown v. Gardner*, 513 U.S. 115, 118 (1994).  Here,

7    the commonality of language between Sections 7 and 7(B) makes clear that Section 7(B) refers to

8    the same types of transfers ("any transfer of funds") as Section 7 itself—*i.e.*, those initiated

9    electronically that instruct a financial institution to debit an account.  Section 7(B) then carves out

10   from EFTA's coverage the subset sent "by means of" a wire transfer service.  In other words,

11   Congress's choice of words shows that it deliberately chose to exclude a consumer-originated

12   electronic fund transfer carried out through a wire-transfer service—including the initial "debit"

13   of the "account" as part of that wire transfer.

14         This interpretation is confirmed by Section 7(B)'s application specifically to "any transfer

15   of funds" that is "made by a financial institution *on behalf of a consumer*."   15 U.S.C.

16   § 1693a(7)(B) (emphasis added).  Read together with Section 7, this language makes clear that an

17   exempted funds transfer begins when a *consumer* "initiate[s the transaction] through an electronic

18   terminal" and "instruct[s] a financial institution to debit" their "account."  *Id.* § 1693a(7).  This is

19   not surprising, as it is entirely consistent with the ordinary understanding of a wire transfer—the

20   transfer a financial institution makes on behalf of a consumer, Person A, to make payment to

21   Person B, starting with a debit of Person A's account.

22         This understanding has long been settled.  It was captured not only in the text of Sections

23   7 and 7(B), but also in Regulation E—which implements EFTA—and in Article 4A, which

24   postdates EFTA and was developed to comprehensively govern wire transfers.  *Supra* pp.3-4.

25   Regulation E, for example, states that Section 7(B)'s exclusion applies to "Wire or other similar

26   transfers," and describes the sorts of transfers conducted via "Fedwire or through a similar wire

27   transfer system that is used primarily for transfers between financial institutions or between

28   businesses."  12 C.F.R. § 1005.3(c)(3); *see also* 44 Fed. Reg. at 18,468, 18,471 ("clarify[ing] that

1  transfers for consumers by any network similar to Fedwire (that is used primarily for financial

2  institutions or business transfers) are exempt").  Just as importantly, Article 4A conceives of a

3  singular "funds transfer" as a "*series of transactions*, beginning with the originator's payment

4  order, made for the purpose making payment to the beneficiary of the order."  Cal. Com. Code

5  § 11104(a) (emphasis added).  Given EFTA's text, Regulation E, and U.C.C. Article 4A, it would

6  be highly unusual to conceive of Section 7(B) as exempting only the interbank segment of a wire

7  transfer.  Rather, the common understanding of a wire transfer includes the series of transactions

8  comprising its whole, including the original deduction of money from the sender's account.  The

9  contrary theory underlying the Complaint—that Section 7(B) exempts only those steps that occur

10  after the money is deducted from the sender's account—finds no support in the plain and long-

11  understood meaning of the statutory text.

12      **B.      Statutory Context Confirms EFTA Does Not Apply To The Transactions Here**

13      There are additional contextual reasons, beyond the plain text of EFTA, that Section 7(B)

14  must be read to cover the entire wire transfer rather than solely the interbank segment.  Under the

15  Complaint's theory, Section 7(B) would be entirely superfluous.  The canon against surplusage

16  directs courts to prefer an "interpretation [that] gives effect to every clause and word of a statute."

17  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *see also United States v. Mariner Health

18  Care, Inc.*, 552 F. Supp. 3d 938, 953 (N.D. Cal. 2021) ("[T]he canon against surplusage … advises

19  that '[a] statute should be construed so that effect is given to all its provisions, so that no part will

20  be inoperative or superfluous, void or insignificant.'" (quoting *Corley v. United States*, 556 U.S.

21  303, 314 (2009))).  And "[w]hen a statutory construction … 'render[s] an entire subparagraph

22  meaningless,' … the canon against surplusage applies with special force," and "still more when

23  the subparagraph is so evidently designed to serve a concrete function." *Pulsifer v. United States*,

24  601 U.S. 124, 143 (2024) (quoting *Nat. Assn. of Mfrs. V. Dep't of Defense*, 583 U.S. 109, 128

25  (2018)).

26      Here, if Plaintiffs were correct, Section 7(B) would be rendered entirely meaningless.  It

27  would operate to exclude from EFTA's coverage only a sliver of a wire transfer that would never

28  have been independently subject to EFTA in the first place, according to EFTA's own language.

1   EFTA governs the relationship between a consumer and her bank with respect to a certain class of

2   fund transfers.  That is evident from the definition of "account" in the statute, which must be an

3   account "established primarily for personal, family, or household purposes."   15 U.S.C.

4   § 1693a(2).  It is also evident in myriad other provisions, including those relating to unauthorized

5   transfers, *id.* § 1693g, documentation of transfers, *id.* § 1693d, and error resolution, *id.* § 1693f,

6   each of which confirms EFTA's focus on the transfer of funds *from consumer accounts*.  EFTA

7   does not address matters between banks and the banks' own accounts.  This is true of EFTA's

8   definition of "electronic fund transfer," regardless of any exemption.  By its very text, that

9   definition applies only to an instruction to debit "an account," *id.* § 1693a(7)—which, again, is

10  defined to be only one "established primarily for personal, family, or household purposes," *id.*

11  § 1693a(2).  It would have made no sense for Congress to direct Section 7(B) to *solely* interbank

12  transfers, rather than the end-to-end transfer beginning with the *consumer's* account, given that the

13  definition of "electronic fund transfer" would not cover that interbank transfer standing alone.

14  Rather, the only need for the exemption would be to exempt the full wire transfer, *including* the

15  *consumer's* payment order instructing a financial institution to debit the *consumer's* account.

16        This understanding is confirmed by the way EFTA works.  The statute provides consumers

17  with procedural mechanisms to seek relief when things go awry with covered electronic fund

18  transfers.  But consumers have no interest in—and would never be expected to present disputes about—

19  their financial institutions about—the purely behind-the-scenes process banks use to transfer funds

20  amongst themselves.  What matters to the consumer, and thus what consumers would be expected

21  to dispute and request investigations of, is the wire transfer as ordinarily understood: whether the

22  deduction of money from the consumer's account had been authorized and whether the correct

23  amount of money made it to the intended payee.  The supposition that Congress could have

24  believed it needed to protect financial institutions from consumer disputes about solely interbank

25  transfers—necessitating an exemption narrowly targeted to those interbank transfers alone—is

26  simply not credible.

27        Moreover, even that supposition could not explain why Congress would then, in Section

28  7(B), expressly preserve a consumer's right to challenge the purely interbank segment of an ACH

transfer.    The Section 7(B) exemption includes its own carveout (*i.e.*, an exception to the exemption), providing that the exemption does not apply to an electronic funds transfer "processed by automated clearinghouse."  15 U.S.C. § 1693a(7)(B).  That proviso in Section 7(B) for ACH transfers only makes sense when Section 7(B)'s use of the phrase "any transfer of funds" is read to refer to the entire transfer (*i.e.*, the wire or ACH transfer), end to end.  The ACH proviso thus means Congress wanted to preserve a consumer's right to use EFTA's protections and remedies as to ACH transfers, inclusive of the consumer's payment order instructing their bank to deduct money from their account for an ACH.  The ACH proviso would be meaningless to a consumer if the only thing Congress preserved was a consumer's right to avail herself of EFTA's protections and remedies as to the purely interbank segment of an ACH transfer.    The more natural construction ensured EFTA's coverage for end-to-end consumer ACH transfers at a time when the ACH network was still in its infancy.  Section 7(B) thus carved out from EFTA those transfers "made … by means of a service" used less frequently by consumers (*i.e.*, wire-transfer systems), while ensuring EFTA's application to ACH transfers, which were (and are) used primarily by consumers.  *See, e.g.*, S. Rep. No. 95-915, at 3 (1978) (EFTA intended to apply to "automated clearing house transactions through which a consumer's account is automatically debited for a recurring payment, like insurance premiums, or is regularly credited with wages, pension benefits, and the like").

"It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).  Here, that statutory context confirms what the text already makes plain:  the Section 7(B) exemption applies to the full series of transactions comprising a wire transfer end to end, including the payment order instructing the financial institution to deduct money from the consumer's account.

C.    **Extensive Case Law Holds That EFTA Does Not Apply To The Transactions Here**

What is evident from EFTA's text and context is confirmed by mountains of case law reaching the same conclusion:  that by operation of Section 7(B), EFTA does not apply to wire transfers, end to end.

To start, courts in this district and other districts within the Ninth Circuit have recognized this conclusion as settled and uncontroversial.  In *Bakhtiari v. Comerica Bank, Inc.*, the court considered a case in which the plaintiffs were duped into making two wire transfers "to pay someone who turned out to be a scam artist."  2024 WL 3405340, at *1 (N.D. Cal. July 12, 2024). The court dismissed the plaintiffs' claims under EFTA because "the wire transfers in question are not covered under EFTA."  *Id.*  There, as here, the plaintiffs "not only characterize that they engaged in a 'wire transfer' … but also allege the transfer of funds took place between defendant, a financial institution, and a beneficiary bank," so the transfers were wire transfers and accordingly exempt entirely from EFTA.  *Compare id. with*, *e.g.*, Compl. ¶¶ 9, 12, 72; *see also McClellon v. Bank of America, N.A.*, 2018 WL 4852628 (W.D. Wash. Oct. 5, 2018) (rejecting application of EFTA and Regulation E to unauthorized wire transfer); *Kanji v. Bank of America, N.A.*, 2020 WL 8175548, at *3 (C.D. Cal. Aug. 25, 2020) ("Notably, the EFTA does not apply to wire transfers.").

This straightforward conclusion abounds in the precedent of federal courts outside the Ninth Circuit too.  The Sixth Circuit, relying in part on support from the Fourth and Eleventh Circuits, held that when "funds transfers at issue were made through Fedwire," "EFTA does not apply."  *Wright v. Citizen's Bank of East Tenn.*, 640 F. App'x 401, 404 (6th Cir. 2016) (citing *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 223 (4th Cir. 2002)).  Numerous other courts have reached the same conclusion.  *See  Nazimuddin v. Wells Fargo Bank N.A.*, 2024 WL 3431347, at *2 (S.D. Tex. June 24, 2024) (dismissing EFTA claim with prejudice "[b]ecause Regulation E excludes '[w]ire or other similar transfers' from the definition of 'electronic fund transfer,' [so] the EFTA does not apply to the wire transfers of which Plaintiff complains"), *report and recommendation adopted*, 2024 WL 3559597 (S.D. Tex. July 25, 2024), *aff'd* 2025 WL 33471 (5th Cir. Jan. 6,

2025) (citation omitted); *Fischer & Mandell LLP v. Citibank, N.A.*, 2009 WL 1767621, at *3-4 (S.D.N.Y. June 22, 2009) ("Regulation E explicitly excludes from the coverage of the EFTA transfers of funds made through checks and wire transfers."); *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 633 (N.D. Ill. 2022) (Article 4A, not EFTA, governed wire transfers); *Bodley v. Clark*, 2012 WL 3042175, at *4 (S.D.N.Y. July 23, 2012) ("[W]ire transfers are explicitly excluded from EFTA's definition of 'electronic fund transfers[.]'").

Indeed, courts have rejected the very theory Plaintiffs rely on here, in which litigants attempt to parse a single wire transfer and thereby render the Section 7(B) exemption applicable to only the interbank segment.  In *Pope v. Wells Fargo Bank, N.A.*, the plaintiff made the same argument on which Plaintiffs must rely here: that "there were two transfers[, o]ne initiated by her … and another by Wells Fargo to JP Morgan Chase." 2023 WL 9604555, at *3 (D. Utah Dec. 27, 2023).  But the court held that "[t]he language of EFTA and the regulations support Wells Fargo's position" and "[t]he fact that there were 'two transfers' … do[es] not allow the wire transfer here to fall with[in] EFTA." *Id.* at *3-4.  Similarly, in *Stepakoff v. IberiaBank Corp.*, a plaintiff brought an EFTA claim challenging her bank's failure to execute a wire transfer she directed (both by phone and via email).  637 F. Supp. 3d 1309, 1311 (S.D. Fla. 2022).  In that case, the only transaction at issue was the electronic payment order the plaintiff gave her bank, and not any interbank transfer, because her bank never executed the initial order.  *Id.*  Nevertheless, the court held that the plaintiff failed to state a claim because Section 7(B) exempted from EFTA's coverage the wire transfer at issue.  *Id.* at 1313.  In other words, *Stepakoff* necessarily concluded that the initial payment order—the only "transfer" even conceivably at issue in that case—was "specifically exclude[d] … from EFTA coverage" because it was a "'[w]ire or other similar transfer[].'"  *Id.* at 1312.

Despite packing their Complaint with legal argument and conclusions—which the Court need not accept as true on a motion to dismiss, *see Iqbal*, 556 U.S. at 678—Plaintiffs cite only the recent outlier decision by the Southern District of New York in *New York v. Citibank, N.A.*, to support the novel theory that EFTA exempts only the purely interbank segment of a wire transfer. That decision is of course not binding on this court, and any persuasive value it might otherwise

carry is doubly undermined by (1) overwhelming contrary case law, including the decisions set out above, and (2) the fact that the *Citibank* court has certified its order for interlocutory review. For all the reasons set forth above concerning EFTA's text, *see supra* Parts I.A, I.B, the *Citibank* decision is also wrong. That decision, vulnerable to reversal on appeal, does not support upending the settled view of EFTA's scope in this and numerous other judicial districts.[1]

**D.    Regulatory Guidance Confirms That EFTA Does Not Apply To The Transactions Here**

If statutory text, context, and uniform case law were not enough, the government entities charged with regulating the financial industry also agree that EFTA does not apply to wire transfers like the ones at issue here.

To start, when the Consumer Financial Protection Bureau implemented certain amendments to Dodd-Frank regarding regulation of unique, cross-border remittance transfers more than a decade ago, the Bureau stated the then-universally-accepted view that "until the Dodd-Frank Act [remittance] provisions become effective, *wire transfers are entirely exempt from the EFTA and Regulation E* and instead are governed by State law through State enactment of Article 4A of the U[CC]," which provides "[c]onsumers" with protections "in connection with an unauthorized [wire] transfer," including "improperly executed payment orders." 77 Fed. Reg. 6,194, 6,211-6,212 (Feb. 7, 2012). The CFPB also stated that, due to the remittance-transfer amendments, U.C.C. § 4A-108 (which provides that Article 4A does not apply to a transfer "any part of which" is governed by EFTA, *supra* p.4) would mean that Article 4A "will no longer apply" to the remittance transfers addressed under EFTA pursuant to Dodd-Frank. *Id.* at 6,211. Moreover, despite initially supporting the New York Attorney General in *Citibank*, the CFPB later disclaimed that support, recognizing that its statement of interest was "inappropriate" and noting that the New York Attorney General's theory—identical to Plaintiffs' theory here—"advances an interpretation of [EFTA] that has never been embraced by any federal court prior to [the S.D.N.Y.

---

[1] At least one district court has followed the erroneous reasoning of the *Citibank* court, but did so without being presented with, and thus, without considering "arguments for why [it] should reject the legal reasoning and holding in *Citibank*," like those advanced here. *Walling by Walling v. Bank of America, N.A.*, --- F. Supp. 3d ---, 2025 WL 1392278, at *3 (D.S.C. May 8, 2025).

decision]," nor "articulated by the [CFPB] or the Federal Reserve, which administered Regulation E before that responsibility was transferred to the [CFPB]," *Citibank*, CFPB Mot. to Withdraw, No. 24-cv-659, Dkt. 69 at 1 (Mar. 25, 2025).

The Federal Reserve Board's pronouncements also support the construction of the Section 7(B) exemption to apply to wire transfers end to end. For example, the Board—which was charged with implementation of EFTA prior to July 2011—has similarly observed that "Article 4A provides comprehensive rules governing rights and responsibilities arising from wire transfers," 61 Fed. Reg. 19,678, 19,679-19,680 (May 2, 1996), and "[i]n general, Fedwire funds transfers *to or from consumer accounts* are exempt from the EFTA and Regulation E," 12 C.F.R. pt. 210, subpt. B, app. A, cmts. 4-5 to § 210.25(b)(1) (emphasis added); *see also* Fed. Rsrv. Bd., Consumer Compliance Handbook, 85 (2016), https://tinyurl.com/3wfwdsma ("any transfer of funds for a consumer within a system that is used primarily to transfer funds between financial institutions or businesses, e.g., Fedwire or other similar network" is not "covered by the EFTA and Regulation E"). And Regulation J, promulgated by the Federal Reserve Board, incorporates Article 4A, 12 C.F.R. § 210.25(b)(1), which as noted provides that a "funds transfer" is "the *series of transactions*, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order," 12 C.F.R. pt. 210, app. A, § 4A-104(a) (emphasis added).

The pronouncements of the Federal Deposit Insurance Corporation ("FDIC") also support reading the Section 7(B) wire transfer exemption to apply to wire transfers end to end. For example, the FDIC compliance examination manual instructs examiners that "[a]ny transfer of funds for a consumer within a system that is used primarily to transfer funds between financial institutions or businesses, *e.g.*, Fedwire or other similar network" is excluded from EFTA. FDIC, Consumer Compliance Examination Manual 809 (2022), https://tinyurl.com/3c9refbt. That instruction reiterates FDIC interpretive guidance—issued more than 30 years ago—that consumer-initiated wires are excluded from EFTA and Regulation E. Mark A. Mellon, FDIC, Interpretive Letter: Users' Rights Under EFTA in the Event of Bank Error Regarding an Electronic Wire Transfer, 1994 WL 393720, at *1 (Apr. 26, 1994).

Also among this wall of uniform regulatory views is that of the Office of the Comptroller of the Currency ("OCC").  The OCC has stated—recently—that "[w]ire transactions are covered under [Article] 4A of the Uniform Commercial Code."  OCC, *Message from the Director–Wire Transfer Scams and Ways to Protect Yourself* (July 2023), https://tinyurl.com/38pc7bxu.  And the OCC agrees that "a wire transfer transaction begins when the originator (bank customer) requests the transfer.  The originating bank verifies the request then initiates the transaction with the operator (e.g., Federal Reserve Bank or TCH) … .  The beneficiary bank then credits the beneficiary account in accordance with the payment instructions." OCC, Comptroller's Handbook on Payment Systems 10-11 & Fig. 3 (Oct. 2021), https://tinyurl.com/yn8c288b.

Finally, the Financial Crimes Enforcement Network ("FinCEN") agrees that wire transfers—end to end—are not covered by EFTA.  *See* 78 Fed. Reg. 72,813, 72,814 (Dec. 4, 2013) ("Wire or other similar transfers conducted through Fedwire … or similar wire transfer systems primary used for transfers between financial institutions or between business are also specifically excluded from the definition of 'electronic fund transfer.'").  And FinCEN agrees that a funds transfer is "a series of payment instruction messages, beginning with the originator's (sending customer's) instructions, and including a series of further instructions between the participating institutions, with the purpose of making payment to the beneficiary (receiving customer)." FinCEN, Feasibility of a Cross-Border Electronic Funds Transfer Reporting System Under the Bank Secrecy Act 55 (Oct. 2006), https://tinyurl.com/krh9thxp.

Though their Complaint consists of legal argument, Plaintiffs fail to identify any regulatory guidance that supports their novel re-interpretation of Section 7(B)'s long-settled exemption of wire transfers—end-to-end—from EFTA.  Given EFTA's plain text, the context in which the Section7(B) wire-transfer exemption exists within EFTA, and the overwhelming judicial and regulatory rejection of Plaintiffs' position and the principles on which it rests, the Court should dismiss the Complaint with prejudice.

1

2

## II.    Even If EFTA Applied, Plaintiffs Fail To Plausibly Allege An "Unauthorized Transfer"

Even assuming the EFTA regime applied here—it does not, for the reasons above—Plaintiffs' EFTA claims still fail because Plaintiffs have not plausibly alleged that the two transfers at issue were "unauthorized," as that term is used in EFTA.  The statute defines an "unauthorized electronic fund transfer" as "an electronic fund transfer from a consumer's account initiated by a person *other than the consumer* without actual authority to initiate such transfer and from which the consumer receives no benefit."  15 U.S.C. § 1693a(12) (emphasis added).

The Complaint here is notable for the absence of allegations regarding the factual circumstances of the transfers.  Plaintiffs allege they were the "victims of … bank fraud" having unfortunately fallen victim to a scam.  Compl. ¶¶ 8, 38.  But the Complaint consistently uses passive voice that obscures how the transfers were effectuated—and *who* actually sent the instructions to the Bank to send the wire transfers.  *Id.* ¶¶ 9-10 ("transfers made"; transfers "were … initiated"; transfers "involved debits from Plaintiffs' accounts").  There are no allegations that a third party sent the transfers, as distinguished from a third party persuading one of the Plaintiffs to do so themselves, as frequently occurs in a scam.  These missing facts are critical to determining whether the transactions were "unauthorized" within the meaning of EFTA, and Plaintiffs' failure to plead any such facts is fatal to their EFTA claims.

It is not sufficient that the Complaint occasionally and conclusorily alleges that the transactions were "unauthorized" or that "Plaintiffs did not perform, authorize, or benefit from those transactions."  Compl. ¶¶ 28, 33.  For one thing, it is not clear that a consumer—rather than her financial institution—ever "performs" a wire transfer, so the absence of a similar allegation about whether Plaintiffs *initiated* the transfers raises questions about what precisely the Complaint intends to allege.  But in any event, allegations that a "transfer was 'unauthorized,' without further factual support, … are 'legal conclusions, couched as facts, and are not sufficient under *Twombly* and *Iqbal* to state a claim.'"  *Guarnieri v. Be Money Inc.*, 2022 WL 11381916, at *5 (C.D. Cal. Oct. 18, 2022) (quoting *Gilbert v. Bank of Am., N.A.*, 2014 WL 12644029, at *3 (N.D. Cal. Sept.

23, 2014)).  Stripped of those conclusory allegations, the Complaint contains no allegations that the transfers were initiated by someone other than Plaintiffs.

It is unfortunate that Plaintiffs may have been the victims of a scam.  But if they were induced by a fraudster to initiate the transfers, then the law is explicit that the transfers would not be "unauthorized" under EFTA.  *See, e.g.*, *Tristan v. Bank of America*, 2023 WL 4417271, at *10 (C.D. Cal. June 28, 2023) (dismissing EFTA claim where plaintiff initiated transfers at third party's request); *Sanchez v. Navy Federal Credit Union*, 2023 WL 6370235, at *22-23 (C.D. Cal. Aug. 14, 2023) (same).

The failure to allege facts supporting the assertion that the transfers were unauthorized is facially fatal to Plaintiffs' Count One claim, seeking liability "for unauthorized transfers."  Compl. ¶ 77.  It is also fatal to their Count Two claim, which seeks to impose liability under 15 U.S.C. § 1693f and corresponding regulations for failing to investigate the transfers at issue.  Having failed "to identify any actual 'error' with how Defendant treated [their] … transactions under the EFTA—that is, having failed to plausibly allege the transactions were "unauthorized"—Plaintiffs "also cannot maintain a cause of action based on Defendant's failure to conduct a reasonable investigation into [their] claim."  *Sanchez*, 2023 WL 6370235, at *24.

Moreover, Plaintiffs' claim that Defendant failed to investigate properly is belied by their own allegations.  Regulation E provides that the Bank's "review of its own records regarding an alleged error" satisfies § 1693f when the error "concerns a transfer to or from a third party" and "there is no agreement between the institution and the third party for the type of electronic fund transfer involved."  *Tristan*, 2023 WL 4417271, at *9 (quoting 12 C.F.R. § 205.11(c)).  Plaintiffs' allegations show that Defendant *did* investigate their claim and determined that "the transaction in question was performed by an authorized signer on the account," "using a device that is consistent with previous valid account activity."  Compl. ¶ 35.  The Bank's decision was based "on [its own] records and the information [Plaintiffs'] provided when [Plaintiffs] contacted" the Bank.  *Id.* Because Plaintiffs themselves allege that the Bank investigated, reviewed its records, and notified Plaintiffs of the result, Plaintiffs' Section 1693f claim should be dismissed.  *See Tristan*, 2023 WL

4417271, at *10 (dismissing Section 1693f claim based on an analogous investigation into an alleged error).

EFTA does not apply to the transfers at issue.  But even if it did, Plaintiffs' claims would still require dismissal because they fail to plausibly allege that the transfers were "unauthorized," and their own allegations demonstrate that Bank of America did investigate their claim.

**III.     Dismissal Should Be With Prejudice**

Dismissal without leave to amend is appropriate where "[f]urther amendment would simply be a futile exercise." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020).  When a "Plaintiff['s] legal theories fail," regardless of any deficiencies in their factual allegations, that standard is met. *Id.*  Here, the Complaint is legally deficient because it depends on the erroneous legal position that EFTA governs the transactions at issue.  Because EFTA does not apply, no additional allegations could cure this deficiency, and amendment would be futile.  The Complaint should accordingly be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: July 2, 2025

WILMER CUTLER PICKERING HALE AND DORR LLP

By:     */s/ Michael Mugmon*
Michael Mugmon

*Counsel for Defendant Bank of America, N.A.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2025, a true and correct copy of the foregoing Motion To Dismiss was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: July 2, 2025                                          By:    */s/ Michael Mugmon*

                                                                                    Michael Mugmon