**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**San Francisco Division**

| | |
|---|---|
| RICKY H. CHEN and AMIN WU, *individually and as representatives of the class*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　　　　　　Defendant. | Case No. 3:25-cv-03790-EMC<br><br>**AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

<u>**AMENDED CLASS ACTION COMPLAINT**</u>

1.　　Plaintiffs Ricky H. Chen and Amin Wu, on behalf of themselves and the class set forth below, allege as follows for their Class Action Complaint against Bank of America, N.A. ("BANA").

<u>**PRELIMINARY STATEMENT**</u>

2.　　Congress enacted the Electronic Fund Transfer Act ("EFTA") as a "remedial consumer protection statute," which courts "read liberally to achieve the goals of protecting consumers." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019).

3.　　Concerned that uninformed consumers would encounter abuse in a rapidly changing electronic banking industry, Congress enacted several provisions to limit consumer liability for "unauthorized" electronic fund transfers.

4.　　Relevant here, the EFTA: (1) limits consumer liability for unauthorized electronic fund transfers, 15 U.S.C. § 1693g(a); and (2) independently requires that financial institutions investigate consumer claims of "error," including unauthorized electronic fund transfers, 15 U.S.C. § 1693f(a).

5.    Addressing those provisions, one federal appeals court recently explained that

> the purpose of the [EFTA] is to *benefit consumers, even at the expense of financial institutions*. The EFTA requires financial institutions to investigate and resolve consumer-reported unauthorized electronic fund transfers within a limited time frame. And although consumers can be liable for unauthorized electronic fund transfers involving their accounts, the EFTA limits their liability and places the burden on financial institutions to prove consumer liability.

*Michigan First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 427 (6th Cir. 2024) (emphasis added).

6.    The EFTA's unauthorized use protections are especially important *now* because banks are rapidly replacing traditional modes of banking with online products.

7.    Those technological advancements—such as innovations aimed at making banking easier—have expanded the fraudster's playbook.

8.    Plaintiffs are recent victims of this new wave of bank fraud.

9.    On September 16, 2024, Plaintiffs were victimized by unauthorized transfers made from their BANA accounts, including: a $78,000 transfer to "Ship N Slide LLC" from their Preferred Rewards checking account; and a $28,000 transfer to the same entity from Mr. Chen's Preferred Rewards savings account.

10.    Those transactions debited Plaintiffs' accounts—ancillary to any subsequent transfer through a wire system—via transfers that qualify as "electronic fund transfer[s]" as that term is defined in the EFTA, 15 U.S.C. § 1693a(7).

11.    BANA, however, classified those transactions as wire transfers in an effort to avoid application of the EFTA through its purported "wire transfer exemption." *See* 15 U.S.C. § 1693a(7).

12.    Upon information and belief, BANA considered the transactions as wire transfers because the debited funds were subsequently transferred through Fedwire or a similar wire transfer system.

13.    As a consequence, BANA assessed Plaintiffs' right to reimbursement under Article 4A of the Uniform Commercial Code and not the EFTA.

14.    That determination was in error. *See New York by James v. Citibank, N.A.*, 763 F. Supp. 3d 496, 514–15 (S.D.N.Y. 2025) ("[T]he plain meaning of subsection (7)(B) does not apply to electronic transfers of funds between consumers and their financial institutions, even when made ancillary to an interbank wire.").

15.    BANA's mistake of law caused BANA to violate the EFTA in several respects, costing Plaintiffs $106,000, as well as other damages resulting from the loss of their life savings.

16.    BANA violated 15 U.S.C. § 1693g because it held Plaintiffs liable for unauthorized transfers that they did not perform and from which they did not benefit.

17.    BANA violated 15 U.S.C. § 1693f(a) because it failed to investigate Plaintiffs' disputes in compliance with the EFTA's error resolution procedures.

18.    BANA's §§ 1693g and 1693f(a) violations entitle Plaintiffs to their actual damages, statutory damages, attorneys' fees, and costs. *See* 15 U.S.C. § 1693m.

19.    Additionally, Plaintiffs are entitled to treble damages because BANA did not timely provide them with provisional credits and neither conducted a good faith investigation of Plaintiffs' disputes, nor had a reasonable basis for believing that Plaintiffs authorized the challenged transactions.

20.    Alternatively Plaintiffs are entitled to treble damages because BANA knowingly and willfully concluded that their accounts were not in error when such conclusion could not

reasonably have been drawn from the evidence available to BANA at the time of its investigation. 15 U.S.C. § 1693f(e).

21.     Upon information and belief, BANA considers all transfers processed through Fedwire or a similar wire transfer system to be governed by Article 4A of the Uniform Commercial Code.

22.     Thus, Plaintiffs bring this action on behalf of themselves and the class for violations of the EFTA, 15 U.S.C. §§ 1693g and 1693f(a).

## JURISDICTION AND VENUE

23.     This Court has jurisdiction under 28 U.S.C. § 1331.

24.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this District and Division, and a substantial part of the events giving rise to Plaintiffs' claims occurred here.

## PARTIES

25.     Plaintiff Ricky H. Chen is a natural person and a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

26.     Plaintiff Amin Wu is a natural person and a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

27.     BANA is a national bank with a principal place of business in Charlotte, North Carolina. It is a "financial institution" as defined by the EFTA, 15 U.S.C. § 1693a(9).

## FACTS

### The Unauthorized Transfers and BANA's Mistake of Law

28.     On September 16, 2024, Plaintiffs were victimized by unauthorized electronic fund transfers made from their BANA checking and savings accounts, both of which were established primarily for personal, family, or household purposes.

4

29.    Upon information and belief, the fraudulent scheme commenced on September 15, 2024, when Plaintiff Ricky Chen received a text message, purportedly on behalf of BANA, asking him to confirm or deny a credit card charge with Apple in the amount of $26.02.

30.    Mr. Chen denied the charge via text message response.

31.    The following day, Mr. Chen received another text message, again purportedly from BANA, asking him to confirm or deny a debit card charge in the amount of approximately $1,502 with Hertz Rent-A-Car.

32.    Mr. Chen again denied the charge via text message response.

33.    Moments after his response, Mr. Chen received a phone call from someone purporting to represent BANA.

34.    The caller advised Mr. Chen that his account was under attack and that BANA needed to review Mr. Chen's account activity.

35.    The caller told Mr. Chen that BANA would FaceTime him so that they could discuss the account activity face-to-face.

36.    Upon information and belief, the caller was a fraudster and did not represent BANA.

37.    Mr. Chen, however, did not know that the caller was a fraudster at that time.

38.    Upon information and belief, the caller gained access to Mr. Chen's iPhone through the FaceTime call using Apple's "remote control" feature.

39.    Mr. Chen does not recall allowing remote access to his phone and, in any event, did not do so intentionally.

40.    At most, Mr. Chen believed that he had shared his screen with the caller to show that the fraudulent transactions relating to the text messages had not appeared.

41. Upon information and belief, through the remote control feature, the fraudster was able to take over Mr. Chen's iPhone, including its BANA iPhone application.

42. Mr. Chen did not give the fraudster permission to access the BANA application on his iPhone.

43. The fraudster's unauthorized access to the BANA application permitted him or her to initiate two electronic fund transfers.

44. Neither Mr. Chen nor his wife performed the transfers.

45. Neither Mr. Chen nor his wife authorized the transfers.

46. Neither Mr. Chen nor his wife knew that the transfers were being performed when they were initiated by the fraudster.

47. One of the transfers removed $78,000 from Plaintiffs' Preferred Rewards checking account, funds that were eventually sent to an external account with Chase Bank, purportedly belonging to an unknown entity named "Ship N Slide LLC."

48. The other transfer removed $28,000 from Mr. Chen's Preferred Rewards savings account, which was then sent to the same external Chase account, purportedly belonging to the same entity.

49. The transfers debited Plaintiffs' accounts—ancillary to any subsequent transfer through a wire system—via "electronic fund transfer[s]" as that term is defined in the EFTA, 15 U.S.C. § 1693a(7).

50. Neither Mr. Chen nor his wife benefitted from those transfers.

51. Upon information and belief, Plaintiffs discovered the fraud within minutes after the transfers were requested by the fraudster.

52. Plaintiffs immediately called BANA to dispute the transactions.

53.     Plaintiffs were then forced to wait on hold for a substantial period of time before being connected to BANA's fraud department.

54.     In their calls with BANA, Plaintiffs were transparent about the fraudulent scheme.

55.     Plaintiffs admitted that Mr. Chen mistook a fraudster for BANA personnel.

56.     Plaintiffs admitted that Mr. Chen believed that the fraudster had obtained remote access to control his iPhone.

57.     Plaintiffs also explained that Mr. Chen believed that, by speaking to the purported BANA employee, he was stopping fraud.

58.     And Plaintiffs repeatedly made clear to BANA that they did not authorize any transactions, press any buttons to effectuate any transfers, or respond to any text messages to confirm any account activity.

59.     During conversations with Plaintiffs, BANA personnel appeared to understand the nuance of the fraudulent scheme, even assuring Plaintiffs that they would receive reimbursement.

60.     But on or about September 27, 2024, BANA responded to Plaintiffs' dispute(s), stating:

> As a result of our research, we've determined that we are unable to honor the claim for the following:
>
> - Our investigation found that the transaction in question was completed using a device that is consistent with previous valid account activity.
>
> - Our investigation found that the transaction in question was performed by an authorized signer on the account and is a valid transaction.
>
> - We based our decision on our records and the information you provided when you contacted us about your account. If you have additional information pertaining to the transaction(s), please contact us at the toll-free number listed below.

7

- You have the right to request the documents we relied on in making our determination and we'll mail the information to you for your records.

- We now consider this claim closed.

61.    Although Plaintiffs disagreed with BANA's decision, BANA did not provide Plaintiffs with proof of its purported findings.

62.    On or about December 5, 2024, BANA separately responded to Plaintiffs' dispute(s), again denying relief, but this time using different language and, ostensibly, different reasons to justify the denial:

> As a result of our research, we've determined that your claim will not be honored for the following reasons:
>
> The Bank of America Deposit Agreement and Disclosures, which is the contract that governs your Account, requires you to take care in protecting your account, including exercising reasonable control over your statements, checks, deposit slips, endorsement and signature stamps. It also recommends being cautious about accepting checks, or other items from strangers. Our investigation found that the transaction in question was confirmed valid by you via (SMS /MMS) text message response or speaking directly with Fraud Detection employee. Our investigation found that the transaction in question was completed using a device that is consistent with previous valid account activity.

63.    Again, Plaintiffs were not provided with evidence of BANA's purported findings.

64.    Confused by its various bases for denying their claims, Plaintiffs appealed BANA's decision.

65.    Plaintiffs asked BANA to look into the bank's records relating to the account access because, upon information and belief, it would have shown that there was account intrusion through the use of remote access or similar technology.

66.    BANA, however, maintained its decision(s) to refuse reimbursement or afford Plaintiffs other relief.  In a letter dated January 10, 2025, BANA stated in relevant part:

> Ricky Chen, thank you for sharing the details of your experience. We regret any inconvenience you may have encountered as a result of this matter and apologize for any service provided that did not meet your expectations.
>
> We have determined that no bank error occurred in the management of your account as the transactions were sent in accordance with your instructions we received. While we are sensitive to the effect this matter has had on you, the claim decisions are valid, and our position remains unchanged.
>
> We regret learning that you may have been the victim of a scam. Although no one expects to be victimized, it is important for consumers to be aware of the circumstances under which they transact business. Bank of America will fully cooperate with any law enforcement agency if we are contacted about a fraud investigation.

67.    That letter separately advised Plaintiffs that BANA "may take a reasonable period of time to investigate the facts and circumstances surrounding any claimed loss" and that BANA does "not have to provisionally credit [Plaintiffs'] account while [BANA] investigate[s]."

68.    On March 5, 2025, BANA sent Plaintiffs another response, which provided in relevant part:

> Our investigation regarding claim numbers 16SEP2024-821724 and 16SEP2024-821769 found that the transactions in question were confirmed as valid by text message response or speaking directly with our Fraud Detection Department. Furthermore, our investigation found that the transaction in question was completed using a device that is consistent with previous valid account activity.

69.    BANA again did not provide proof of its findings, which appeared to conflict with previous determinations.

70.    Based on its letters, BANA denied Plaintiffs' disputes because it believed that Plaintiffs were at fault for allowing the transfers to happen.

71.    BANA, importantly, did not conclude that Plaintiffs themselves *authorized* the disputed transactions.

72.    That distinction is important because a determination of authorization is the critical query for determining customer liability under the EFTA.

9

73.    Under Article 4A of the Uniform Commercial Code, on the other hand, financial institutions can shift liability for an unauthorized transaction so long as the transaction was carried out in good faith using a commercially reasonable security procedure as agreed to between the financial institution and its customer.

74.    To be clear, the EFTA does not care whether the financial institution can prove that the consumer mistakenly provided a fraudster with access to the consumer's account or device. *See Michigan First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 427 (6th Cir. 2024) ("Financial institutions subject to the EFTA must reimburse their customers for unauthorized transactions regardless of fault . . . ."); *Garcia v. Navy Federal Credit Union*, 2025 WL 1100898, at *19 (S.D. Cal. Apr. 14, 2025) ("[T]he Court finds that a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery is not exempted from the definition of an 'unauthorized electronic fund transfer' under Section 1693a(12) by Section 1693a(12)(A)."); *Green v. Capital One, N.A.*, 557 F. Supp. 3d 441, 447 (S.D.N.Y. 2021) (finding "that access to account information that was furnished in the first instance under fraudulent pretenses is not 'authorized' access under the EFTA"); *Georgion v. Bank of Am., N.A.*, 2024 WL 3844960, at *5 (W.D.N.C. Mar. 20, 2024) (following *Green*).

75.    In fact, the CFPB speaks directly on that precise issue in its *Electronic Fund Transfers FAQs*:

> **A third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the consumer's account. Does the transfer meet Regulation E's definition of an unauthorized EFT?**
>
> Yes. As discussed in Electronic Fund Transfers Error Resolution: Unauthorized Fund Transfers Question 1, Regulation E defines an unauthorized EFT as an EFT from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 CFR 1005.2(m). Comment 1005.2(m)-3 explains further that an unauthorized

10

EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery. Similarly, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.

For example, the Bureau is aware of the following situations where a third party has fraudulently obtained a consumer's account access information, and thus, are considered unauthorized EFTs under Regulation E: (1) a third-party calling the consumer and pretending to be a representative from the consumer's financial institution and then tricking the consumer into providing their account login information, texted account confirmation code, debit card number, or other information that could be used to initiate an EFT out of the consumer's account, and (2) a third party using phishing or other methods to gain access to a consumer's computer and observe the consumer entering account login information. EFTs stemming from these situations meet the Regulation E definition of unauthorized EFTs.

CFPB, *Electronic Fund Transfers FAQs*, https://www.consumerfinance.gov/compliance/complian ce-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/ (last visited Apr. 24, 2025).

76.     Thus, a consumer's right to reimbursement may depend entirely on whether the EFTA or Article 4A of the Uniform Commercial Code governs the unauthorized transactions from the customer's account.

77.     Upon information and belief, BANA applies different policies and procedures to transactions that are governed by the EFTA and those that are governed by Article 4A of the Uniform Commercial Code.

78.     Upon information and belief, those differing policies and procedures diverge with respect to BANA's authorization determination.

79.     Disputes that BANA determines are not governed by the EFTA can be decided in the absence of an authorization determination, including, for example, by a finding of a purported device match.

11

80.     Upon information and belief, BANA did not apply the EFTA to Plaintiffs' disputes because it believed that any transaction involving a bank-to-bank wire transfer was not subject to the EFTA. *See* 15 U.S.C. § 1693a(7)(B) (exempting from the definition of "electronic fund transfer" "any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and which is not designed primarily to transfer funds on behalf of a consumer").

81.     That was a mistake of law because a so-called "wire transfer" consummated online invariably involves an intrabank debits that precedes the bank-to-bank wire transfer.

82.     That electronically initiated debit is covered by the EFTA. *See New York by James v. Citibank, N.A.*, 763 F. Supp. 3d 496, 514–15 (S.D.N.Y. 2025) ("[T]he plain meaning of subsection (7)(B) does not apply to electronic transfers of funds between consumers and their financial institutions, even when made ancillary to an interbank wire.").

83.     Because of its mistake of law, BANA failed to comply with the EFTA in several other aspects, including its failure to conduct a compliant investigation that contemplated Plaintiffs' right to reimbursement in the context of the EFTA.

84.     As a consequence of BANA's mistake of law, Plaintiffs suffered significant actual damages, including but not limited to, the amount of the unauthorized transfers, the inability to access or spend their hard-earned money, the economic consequences and stress of not having their money, and severe emotional distress from being denied recourse based on the implied notion that they were at fault.

### *The Statutory Scheme*

85.     The EFTA imposes a $50 cap on consumer liability if the consumer's debit card or other means of access are used by a fraudster. 15 U.S.C. § 1693g(a)(1).

86.     The EFTA's $50 cap on liability is subject to just two exceptions. *See* 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b).

87.     First, the $50 cap is raised to $500 when unauthorized transfers occur due to the loss or theft of an access device, *e.g.*, a debit card, and the consumer fails to notify his bank within two business days of learning that the device has been lost or stolen. 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b)(2).

88.     Second, the $50 cap on a consumer's liability (or the $500 cap if the first exception applies) is lifted if: (1) an unauthorized transfer appears on the monthly statement that banks must send to consumers under 15 U.S.C. § 1693d(c); (2) the consumer fails to report the unauthorized transfer to his bank within 60 days after the statement was sent to the consumer; *and* (3) the bank can establish that unauthorized transfers made after the 60-day period would not have occurred but for the consumer's failure to provide timely notice of the earlier unauthorized transfer. 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b)(2).

89.     In other words, when a consumer fails to alert his bank of unauthorized transfers within 60 days of those transfers first appearing on a bank-issued statement, the consumer's liability is uncapped for transfers that happen after the expiration of the 60-day period, so long as the financial institution can establish that those latter transactions would not have occurred but for the consumer's failure to provide timely notice to the financial institution. *See* 12 C.F.R. § 1005.6(b)(2),(3); *see also Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021) ("A consumer may be held liable for unauthorized transfers occurring after the 60-day period only if the bank establishes that those transfers 'would not have occurred but for the failure of the consumer' to timely report the earlier unauthorized transfer reflected on her bank

statement."). The consumer's liability, however, remains capped at $50 (or $500) for transfers that occurred before or within the 60-day period.

90.    Thus, a financial institution can never hold a consumer liable for more than $50 in unauthorized transfers if: (1) the consumer did not lose his debit card or other access device; and (2) the consumer reported all losses within 60 days from when the first statement showing the fraud was transmitted to the consumer. *See Brown v. Bank of Am., N.A.*, No. 8:21-cv-2334, 2022 WL 2193286, at *2 (D. Md. June 17, 2022) ("[S]ection 1693g of the EFTA limits consumer liability to $50.00 for unauthorized electronic fund transfers, provided the consumer alerts the Bank of the unauthorized transfer timely and that transaction is not the result of a lost or stolen access device.").

91.    The EFTA also requires that the financial institution investigate any "error" reported by a consumer within ten business days of the financial institution's receipt of notice of such error. *See* 15 U.S.C. § 1693f(a).

92.    Alternatively, the financial institution may, within ten business days, provisionally recredit the consumer's account for the alleged error pending the conclusion of its investigation, provided that the investigation is concluded within forty-five days of the receipt of notice of the error. *Id.* § 1693f(c).

93.    Any violation of the EFTA entitles the consumer to actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1693m.

94.    Treble actual damages are available in either of two circumstances.

95.    First, treble damages are recoverable if "the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B)

did not have a reasonable basis for believing that the consumer's account was not in error." 15 U.S.C. § 1693f(e)(1).

96.     Second, treble damages are recoverable if "the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." 15 U.S.C. § 1693f(e)(2).

97.     As one federal appellate court recently remarked, "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Michigan First Credit Union*, 108 F.4th at 427.

## CLASS ACTION ALLEGATIONS

98.     Plaintiffs bring their claims on behalf of themselves individually and, under Federal Rule of Civil Procedure 23(b)(3), on behalf of the following Class:

> All consumers who as: (1) BANA accountholders; (2) disputed as unauthorized one or more electronic fund transfers from an account used for personal, family, or household purposes; (3) but were not provided a provisional credit within 10 days of their dispute; and (4) were ultimately denied reimbursement notwithstanding the EFTA's protections (5) because BANA determined that the transfers were exempt from the EFTA because they were wire transfers (6) during the one-year period before this Complaint was filed.

99.     Plaintiffs are members and representative of the Class.

100.    The Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3).

101.    Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

15

102.    *Numerosity*: The Class is so numerous that joinder of all class members is impracticable. Given the volume of BANA's business, there are hundreds or thousands of class members.

103.    *Commonality*: This case presents common questions of law and fact, including but not limited to:

a.    Whether debits performed ancillary to bank-to-bank wire transfers are covered by the EFTA;

b.    Whether BANA violates the EFTA when it refuses to reimburse consumers for unauthorized debits performed ancillary to bank-to-bank wire transfers;

c.    Whether BANA undertakes EFTA-compliant investigations of disputes pertaining to unauthorized debits performed ancillary to bank-to-bank wire transfers;

d.    Whether BANA fails to provide provisional credits when a consumer disputes unauthorized debits performed ancillary to bank-to-bank wire transfers;

e.    Whether BANA makes good faith investigations of disputes pertaining to unauthorized debits performed ancillary to bank-to-bank wire transfers;

f.    Whether BANA knowingly and willfully concludes that unauthorized debits performed ancillary to bank-to-bank wire transfers are not unauthorized electronic fund transfers governed by the EFTA; and

g.    Whether BANA's conduct violates the EFTA, 15 U.S.C. §§ 1693g and 1693f(a).

104.    *Typicality*: Plaintiffs' claims are typical of the members of the Class. The EFTA violations suffered by Plaintiffs are typical of those suffered by other class members, and BANA treated Plaintiffs consistently with other class members, in accordance with its standard policies and practices. Discovery will show that BANA used specific policies and procedures to deny Plaintiffs' disputes automatically without any consideration of the EFTA's provisions because

EFTA-covered transfers were followed by bank-to-bank wire transfers, which BANA erroneously believed exempted the entire end-to-end transaction from the EFTA's coverage.

105. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class because they and their experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Class.

106. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. BANA's conduct, as described in this Class Action Complaint, stems from common and uniform policies and practices, and it has resulted in common violations of the EFTA. Members of the Class do not have an interest in pursuing separate actions against BANA in consideration of the substantial expense, burden, and uncertainty of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation, which might result in inconsistent judgments concerning BANA's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

107. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

**COUNT ONE:**
**VIOLATION OF THE EFTA AND REGULATION E**
**15 U.S.C. §§ 1693g, 1693m, 12 C.F.R. § 1005.6(b)**

108. Plaintiffs incorporate each of the preceding allegations.

17

109.    BANA violated 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6(b) by holding Plaintiffs and the members of the Class liable for unauthorized transfers in excess of the applicable statutorily imposed cap.

110.    Because Plaintiffs and the members of the Class did not authorize the subject transfers, BANA cannot meet its burden of establishing that the transfers were, in fact, authorized, as required under the EFTA. *See* 15 U.S.C. § 1693g(b).

111.    Plaintiffs and the members of the Class suffered actual damages because of BANA's violations of 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6(b), including but not limited to, the amount of the unauthorized transfers, the inability to access or spend their hard-earned money, the economic consequences and stress of not having their money, and severe emotional distress from being denied recourse based on the implied notion that they were at fault.

112.    Based on BANA's noncompliance with 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6(b), Plaintiffs and the members of the Class seek actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1693m.

**COUNT TWO:**
**VIOLATION OF THE EFTA AND REGULATION E**
**15 U.S.C. §§ 1693f(a), 1693f(e), 1693m, 12 C.F.R. § 1005.11(c)**

113.    Plaintiffs incorporate each of the preceding allegations.

114.    BANA violated 15 U.S.C. § 1693f(a) by failing to investigate Plaintiffs' and the members of the Class's unauthorized transfer disputes in accordance with the error resolution procedures established by the EFTA and Regulation E.

115.    Plaintiffs and the members of the Class suffered actual damages because of BANA's violations of 15 U.S.C. § 1693f(a), including but not limited to, the amount of the unauthorized transfers, the inability to access or spend their hard-earned money, the economic

18

consequences and stress of not having their money, and severe emotional distress from being denied recourse based on the implied notion that they were at fault.

116. Based on BANA's noncompliance with 15 U.S.C. § 1693f(a) and 12 C.F.R. § 1005.11(c), Plaintiffs and the members of the Class seek actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1693m.

117. Plaintiffs and the members of the Class seek treble damages because BANA did not timely provide them with provisional credits and neither conducted a good faith investigation of their disputes, nor had a reasonable basis for believing that they authorized the challenged transactions.

118. Alternatively, Plaintiffs and the members of the Class seeks treble damages because BANA knowingly and willfully concluded that their accounts were not in error when such conclusion could not reasonably have been drawn from the evidence available to BANA at the time of its investigation. 15 U.S.C. § 1693f(e).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, seek the following relief:

a. Determining that this action may proceed as a class action under Federal Rule of Civil Procedure 23;

b. Designating Plaintiffs as the class representative for the Class;

c. Designating Plaintiffs' Counsel as counsel for the Class;

d. Issuing proper notice to the Class at BANA's expense;

e. Declaring that BANA committed violations of the EFTA;

f. Awarding actual and statutory damages as provided by the EFTA;

g. Awarding reasonable attorneys' fees and costs and expenses; and

h. Granting other relief, in law or equity, as this Court may deem appropriate and just.

19

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class, demand a trial by jury on all issues triable by a jury.

Respectfully submitted,

*/s/ Varshini Parthasarathy*
Varshini Parthasarathy
(State Bar No. 350769)
GUPTA WESSLER LLP
235 Montgomery Street, Suite 629
San Francisco, CA 94104
(415) 573-0336
*varshini@guptawessler.com*

Jessica Garland
(State Bar No. 344535)
GUPTA WESSLER LLP
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
*jessie@guptawessler.com*

Andrew Guzzo
J. Patrick McNichol
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
*aguzzo@kellyguzzo.com*
*pat@kellyguzzo.com*

*Counsel for Plaintiffs*

20